## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

TONY ANTHONY GRIFFIN                                        PLAINTIFF
ADC #150964

V.                         No. 4:21-CV-00192-BRW-JTR[1]

MATTHEW WOOD, Nurse,
Barbara Esther Unit, ADC, *et al*.                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

### I. Introduction

On February 20, 2021, Plaintiff Tony Anthony Griffin ("Griffin"), who was then a prisoner in the Ester Unit ("ESU") of the Arkansas Division of Correction ("ADC"), signed his *pro se* § 1983 Complaint, under penalty of perjury.[2] *Doc. 1 at 5; Doc. 1-1 at 6*. Thereafter, on an unknown date, Griffin placed his Complaint in the ESU mailbox for delivery to the Clerk of the Court of the Eastern District of Arkansas. *Doc. 1 at 14*; *Doc. 1-1 at 15*. On March 10, 2021, the Clerk of the Court received Griffin's Complaint, filed stamped it "March 10, 2021," and docketed it as a new § 1983 action. *Doc. 1 at 1*.

---

[1] By consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See Doc. 39*.

[2] Griffin is now incarcerated in the ADC's Pine Bluff Unit. *Doc. 52*.

Griffin's Complaint alleges that Defendants Nurse Matthew Wood ("Wood") and Medical Administrator Mary Carter ("Carter") failed to provide him with adequate medical care for his "severe bean allergy." *Doc. 1*. According to Griffin, Wood and Carter: (1) eliminated his "no bean script;" (2) refused to place him on a bean-free diet; and (3) delayed and/or denied him appropriate medical care for his allergic reactions to beans. *Doc. 1*.

On October 1, 2021, Wood and Carter (collectively "Defendants") filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts asserting that Griffin failed to fully and properly exhaust his administrative remedies *before* he initiated this action. *Docs. 36-38*. Defendants attached to their Statement of Undisputed Facts: (1) ADC Administrative Directive ("AD") 19-34 (*Doc. 37-1*); (2) Griffin's relevant grievance records (*Doc. 37-2*), and (3) the Declaration of Jacqueline Padgett ("Padgett"), the ADC's Medical Grievance Coordinator (*Doc. 37-3*).

On October 13, 2021, the Court entered an Order advising Griffin of his right to file a Response to the Motion for Summary Judgment. *Doc. 40*. The Court clearly explained to Griffin that, "[a]t the summary judgment stage, a plaintiff cannot rest upon mere allegations and, instead, must meet proof with proof." *Id. at 1*. Thus, Griffin was on notice that his Response to Defendants' Motion for Summary Judgment "should include his legal arguments, as well as affidavits,

prison records, or other evidence establishing that there is a genuine issue of material fact that must be resolved at a hearing or trial." *Id.*

Finally, the Order advised Griffin of his obligations under Local Rule 56.1:

> [P]ursuant to Local Rule 56.1, Plaintiff must separately file a "short and concise statement of material facts as to which he contends a genuine issue exists to be tried." Defendants' Statement of Undisputed Material Facts (*Doc. 37*) contains room for Plaintiff to write, below each numbered paragraph, whether he "agrees" or "disagrees" with Defendants' factual statement. **If Plaintiff disagrees, he must explain, in the provided space, why he disagrees and include a citation to the evidence he is relying on to support his version of the disputed fact.**

*Doc. 40 at 1-2* (emphasis in original). It also explained to Griffin that, if he failed to timely and properly file a Response and Statement of Disputed Facts, it would result in "all of the facts in Defendants' Statement of Undisputed Facts being deemed undisputed by [him]." *Id. at 2*.

Griffin filed two Responses to Defendants' Motion for Summary Judgment. *Doc. 41 & 43*. Neither of these Responses were supported by an Affidavit or sworn declaration. *Id*. As Defendants point out in their Reply, Griffin did *not* "meet proof with proof" or comply with Local Rule 56.1. *Doc. 42*. Thus, they contend all of the facts set forth in their Statement of Undisputed Facts should be deemed to be admitted. *Id*.

Griffin later filed a Sur-Reply, which also was unsupported by an Affidavit or sworn declaration. *Doc. 44*. Thus, the only properly presented facts the Court

can consider from Griffin are the ones he stated in his verified Complaint. Because none of those facts controvert or dispute any of the facts in Defendants' Statement of Undisputed Facts, all of the facts in Defendants' Statement of Undisputed Facts are now deemed to be admitted by Griffin, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Eastern District of Arkansas Local Rule 56.1(c).[3]

## II. Discussion

**A.    To Fully and Properly Exhausted His Administrative Remedies, Griffin Was Required to Complete the ADC's Three Step Exhaustion Process *Before* He Filed This Action**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a

---

[3] Local Rule 56.1 provides, in relevant part:
In addition to the requirements set forth in Local Rule 7.2, the following requirements shall apply in the case of motions for summary judgment.
(a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried.
(b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried.
(c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) *shall be deemed admitted unless controverted by the statement filed by the non-moving party* under paragraph (b). (Emphasis added).

4

prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA also requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,* 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, Griffin must comply with the ADC's exhaustion requirements before he can properly bring those claims in a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) state only one problem or issue

per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* ADC Adm. Dir. ("AD") 19-34, § IV(C)(4), (D)(2), & (E)(2). The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. 1 ("Briefly state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Thus, with respect to his medical claims against Defendants, Griffin was required to fully and properly exhaust the ADC's three-step administrative grievance process. *Id.* at §§ IV(D)-(G). This required him to file: (1) a "Step One" informal resolution raising his medical issue with the designated unit-level

problem-solver, within 15 working days of the incident; (2) a "Step Two" formal grievance raising his claims with the Health Services Administrator, within three working days of the denial of the informal resolutions for each of his claims; and (3) a "Step Three" appeal to the ADC Deputy Director for Health and Correctional Programs, within five working days of the Health Services Administrator's Decision on each of his grievances. AD 19-34 § IV(E)-(G)).

### B.    The Undisputed Material Facts

The undisputed material facts establish the following:

1.  On December 4, 2020, Griffin was transferred to the ESU. *See* Defendants' Statement of Undisputed Facts, *Doc. 37 at ¶ 9.*

2.  On February 20, 2021, Griffin signed his § 1983 Complaint under penalty of perjury. *Doc. 1 at 6*; *Doc. 37 at ¶ 2, n. 1.*

3.  Thereafter, but at the latest, on March 9, 2021, Griffin placed his § 1983 Complaint in the ESU mailbox for mailing to the United States District Court for the Eastern District of Arkansas for filing.[4] *Doc. 1 at 15*; *Doc. 37 at ¶ 2.*

---

[4] As previously indicated, the Clerk's Office received and filed Griffin's Complaint on "March 10, 2021." *See Doc. 1 at 1.* The Court takes judicial notice that the *latest possible date* Griffin could have deposited his Complaint into the ESU mailbox was *March 9, 2021*, one day *before* it was received by the Clerk's Office in Little Rock and then file-marked "March 10, 2021." Under the prison mailbox rule, Griffin's Complaint, as a matter of law, was filed, at the latest, on March 9, 2021, one day before it was received by the Clerk of the Court. *See Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003), *rev'd on other grounds*, 393 F.3d 765 (8th Cir. 2005) (under the "prison mailbox rule," a prisoner's § 1983 Complaint is deemed "filed" when he places it in the prison's internal mail system).

4. On March 10, 2021, the Clerk's Office received Griffin's § 1983 Complaint and file-marked it "March 10, 2021." *Doc. 1 at 1*; *Doc. 37 at ¶ 2*.

5. Between December 4, 2020, the date Griffin was transferred to the ESU, and March 9, 2021, the latest possible date his § 1983 Complaint was filed under the prison mailbox rule, Griffin filed four grievances: (1) ESU20-00218: (2) ESU20-00228; (3) ESU21-00016; and (4) ESU21-00017. *Doc. 37 at ¶ 9*; *see also*, Padgett Declaration, *Doc. 37-3 at 1-2*.

6. In Grievance ESU20-00218, Griffin did *not* name or otherwise refer to either Wood or Carter. *Doc. 37-2 at 4*; *Doc. 37 at ¶ 10*. Instead, ESU20-00218 specifically stated that "[t]his [grievance is] on *Ms. Harris* at Ester Unit," and complained about her giving him a tray with bean products on it.[5] *Doc. 37-2 at 4*. Ms. Harris is *not* a party to this action. Because this grievance, which Griffin fully exhausted, did *not* name either of the Defendants or raise any complaints against them, Griffin cannot rely on ESU20-00218 to establish that he fully and properly exhausted any of the claims he is asserting against the Defendants in this action.

---

[5] In his informal resolution, Griffin complained about "Ms. Harris" serving him corn beef hash, which he believed contained soybean products. *Doc. 37-2 at 4*. The Step One response stated: "Per kitchen supervisor C. Harris, beans are not served for breakfast chow. Also after examining ingredients in corn beef hash, there is no beans/soybean products in it." *Id*. Thereafter, Griffin timely filed a Step Two formal grievance, designated as Grievance ESU20-00218, which the Warden found to be without merit, reiterating that there were no beans or soybeans in the corn beef hash. *Id. at 3*. The Deputy Director concurred with the Warden and denied Griffin's Step Three appeal on January 26, 2021. *Id. at 1*.

7.  Griffin's Step One informal resolution, which was later designated as grievance ESU20-00228, specifically asserted inadequate medical care and retaliation claims against only Defendant Wood for serving him a food tray with beans on it, despite knowing about his "serious bean allergy." *Doc. 37-2 at 8*. After the problem-solver responded that Griffin had been "evaluated by a qualified provider," and there was "no supporting evidence in [his] records of [a bean] allergy," Griffin timely filed his Step Two formal grievance. *Id*.

8.  Defendant Carter, the Step Two decision-maker, found the grievance to be without merit because Griffin's "medical record d[id] not support a bean allergy." *Id. at 6*. Griffin timely filed a Step Three appeal in which he asserted that: (1) he has a bean allergy; (2) his "medical record shows the evidence;" and (3) Wood and Carter were retaliating against him by refusing to look at his entire medical record.[6] *Id*.

9.  The Deputy Director's Decision, *which is dated March 10, 2021*, recited Griffin's claims against Wood and Carter, and then stated: "A review of your Electronic Medical Records indicates currently and at the time of your Informal Resolution an allergy to beans is not listed on your medical records." *Id. at 5*. Thus, the Deputy Director's Step Three decision was dated and issued *at least*

---

[6] Griffin raised this retaliation complaint against Carter for the first time in his Step Two grievance, which means, as to Carter, this grievance was not properly and fully exhausted.

*one day after* Griffin initiated this action, which at the latest was on March 9, 2021, when he placed his Complaint in the ESU mailbox.

10.     In Griffin's Step One informal resolution, which was later designated grievance ESU21-00016, Griffin complained that Defendant Wood refused to provide medical care for his bean allergy and refused to "renew his [no-bean] script." *Doc. 37-2 at 11*. At Step Two, Carter found this grievance to be without merit after she reviewed Griffin's medical records and found "no documented allergy to beans." *Id. at 10*.

11.     In his Step Three appeal of ESU21-00016, Griffin accused Carter of lying, claiming he had been diagnosed with a bean allergy, and a doctor had issued him a no-bean script. *Id. at 10*. On March 31, 2021, the Deputy Director denied Griffin's Step Three appeal because the grievance was without merit. *Id. at 9*. Thus, Griffin completed the exhaustion of ESU21-00016 *several weeks after* he initiated this action on or before March 9, 2021. *See ¶¶ 3-5, supra.*

12.     In the informal resolution, which later become Grievance ESU21-00017, Griffin again complained that Wood and Carter refused to update his "no bean script" and failed to provide him adequate medical treatment. *Doc. 37-2 at 15*. The Step One decision-maker responded that "simply possessing a script at one point in time (which [she could] not locate) is not a diagnosis. GERD/acid reflux [is] not an allergic reaction. Place a sick call for reflux issues." *Id*.

13.     Defendant Carter, the Step Two decision-maker, denied ESU21-00017 because Griffin had no medically documented allergy to beans. *Id. at 13*.

14.     Griffin's Step Three appeal stated that he had been diagnosed with a bean allergy while at the ADC's North Central Unit and had been issued a no-bean script there, which should be in his medical records. *Id*. Griffin also pointed out that the Health Services Response was "the second time Ms. Carter has answer[ed] this grievance." *Id*. On April 2, 2021, more than three weeks *after* Griffin initiated this action, the Deputy Director's Decision "upheld" the medical department's response and found ESU21-00017 without merit. *Id. at 12*.

## C.     Based on the Undisputed Facts Griffin Initiated This Action *Before* He Had Fully Exhausted His Administrative Remedies on Any of His § 1983 Claims

### 1. Grievance ESU20-00218 Did Not Name Wood or Carter or Assert Any Claims Against Them

Griffin did not name or otherwise refer to Wood or Carter in Grievance ESU20-00218. *Doc. 37-2 at 4*; *Doc. 37 at ¶ 10*. Nor did ESU20-00218 assert any claims against them. *Id*. Instead, in ESU20-00218, Griffin complained only about "Ms. Harris" serving him bean products. *Doc. 37-2 at 4*. Ms. Harris is not a party to this lawsuit.

Accordingly, none of Griffin's claims against Wood or Carter—the only two Defendants in this § 1983 action—were administratively exhausted in ESU20-00218. *See* AD 19-34 § IV(C)(4) ("A Grievance must specifically name each

11

individual involved in order that a proper investigation and response may be completed …. An inmate who failed to name all parties during the grievance process may have his or her lawsuit dismissed by the court … for failure to exhaust against all parties.").

### 2. Grievances ESU20-00228, ESU21-00016, and ESU21-00017 Were Not Fully Exhausted *Before* Griffin Filed this § 1983 Action On or Before March 9, 2021

#### a. Grievance ESU20-00228

On *March 10, 2021*, the Deputy Director issued his Step Three decision denying appeal of ESU20-00228. *Doc. 37-2 at 5*. Thus, on that date, Griffin completed the exhaustion process on the inadequate medical care and retaliation claims he is asserting against Wood. *Id*. Because he did not name Carter in the informal resolution, Griffin cannot rely on that grievance to establish his exhaustion of any of his claims against her. However, because Griffin initiated this § 1983 action on or before *March 9, 2021*, he did so at least *one day before* he completed the exhaustion process on March 10, 2021. This means he cannot rely on ESU20-00228 to establish that he properly exhausted any of his claims against either Wood or Carter.

The PLRA requires a prisoner to fully exhaust his administrative remedies *before* initiating a § 1983 action. 42 U.S.C. § 1997e(a). Under the "prison mailbox rule," a prisoner's § 1983 Complaint is deemed "filed" when he places it in the

prison's internal mail system. *Sulik v. Taney County,* 316 F.3d 813, 815 (8th Cir. 2003), *rev'd on other grounds,* 393 F.3d 765 (8th Cir. 2005). The undisputed material facts establish that, *at the latest*, Griffin initiated this action on March 9, 2021, the last possible date (viewing the facts in a light most favorable to him) he could have deposited his Complaint in the ESU mailbox and have that document received by the Clerk's Office in Little Rock and file-marked "March 10, 2021."[7]

Because Griffin's § 1983 Complaint was placed in the ESU mailbox at least one day *before* the Deputy Director dated and entered his March 10, 2021 Step Three decision denying Grievance ESU20-00228, Griffin did *not* completely exhaust ESU20-00228 *before* he initiated this action on or before March 9, 2021. *See Hastings v. Wilbur*, Case No. 3:20-cv-160-DPM-JJV, 2021 WL 2444166 (E.D. Ark. June 15, 2021) (rejecting argument that prisoner's grievance was fully exhausted on the same day his § 1983 complaint was docketed, because "the complaint was deemed 'filed' when [prisoner] mailed it—not when the Clerk received and docketed it") (citing *Sulik*, 316 F.3d at 815).

### b. Grievance ESU21-00016

The Deputy Director's Step Three decision denying ESU21-00016 is dated March 31, 2021, several weeks *after* Griffin filed his § 1983 Complaint in this

---

[7] Griffin's Response to Defendants' Motion for Summary Judgment seems to acknowledge his understanding of the prison mailbox rule: "Griffin does not have anything to do with the mail once he drop[s] it in the mail box." *Doc. 41 at 1*.

case. *Id. at 9*; *Doc. 1 at 1*. Accordingly, Griffin did not properly exhaust any of his claims in ESU21-00016 *before* initiating this action.

### c. Grievance ESU21-00017

The Deputy Director's Step Three decision denying ESU21-00017 is dated April 2, 2021, more than three weeks after Griffin initiated this action on or before March 9, 2021. *Doc. 37-2 at 12*; *Doc. 1*. Accordingly, Griffin did not properly exhaust any of his claims in ESU21-00017 *before* he initiated this action.

### 3. Griffin's Argument the ADC's Exhaustion Process Was "Unavailable" to Him Is Without Merit

In an effort to excuse his failure to fully exhaust his claims, Griffin argues that the ADC's grievance process was "unavailable" to him because the ADC grievance policy prohibited Carter from being involved as a decision-maker on ESU21-00016 and ESU21-00017. *Docs. 41 & 43*.

AD 19-34 provides that, "[t]he HSA, or designee, should not respond to a grievance that is alleging misconduct by that individual *unless the inmate still has another step in the grievance process to challenge the conduct*." AD 19-34 § IV(F)(5)(a) (emphasis added). Here, while Carter, at Step Two, denied ESU21-00016 and ESU21-00017, Griffin *still had another step to challenge Carter's decision to the Deputy Director at Step Three*. *Doc. 37-2 at 13*. Thus, Carter's denial of ESU21-00016 and ESU21-00017, at Step Two, was *not* a violation of the

14

ADC's grievance policy and did *not* make the grievance procedure "unavailable" to Griffin.

Further, nothing about Carter's role in ESU21-00016 and ESU21-00017, at Step Two, prevented Griffin from fully exhausting his administrative remedies on those claims, which he successfully completed when the Deputy Director denied his Step Three appeals of those grievances.[8] *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) ("[prison] official's non-compliance [with the grievance procedure] did not cause remedies to be unavailable," where plaintiff was not prevented from utilizing the grievance procedures).

Accordingly, Griffin's argument that the ADC's exhaustion process was not available to him, in connection with ESU21-00016 and ESU21-00017, is without merit. *See Ross v. Blake*, 578 U.S. 632, 642-44 (2016) (a prisoner must properly exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use").[9]

---

[8] Because Griffin initiated this action on or before March 9, 2021, weeks *before* he had fully exhausted ESU21-00016 and ESU21-00017, any arguments about Carter's involvement in those grievances are also moot.

[9] The Court, in *Ross*, made it clear that administrative remedies are "unavailable" to prisoners in three narrowly proscribed circumstances, which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 642-44. None of those exceptions apply here.

15

### III. Conclusion

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED, and this case is DISMISSED, WITHOUT PREJUDICE, for lack of exhaustion.

DATED this 22nd day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

16